**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

_____  :
                                 :
DARYL SAVAGE,                    :
                                 :          Civil Action No.
              Petitioner,        :          09-6418 (RBK)
                                 :
         v.                      :          **MEMORANDUM OPINION**
                                 :          **AND ORDER**
WARDEN DONNA ZICKEFOOSE,         :
                                 :
              Respondent.        :
_____  :

It appearing that:

1.   Petitioner executed his Petition asserting jurisdiction under

     28 U.S.C. § 2241.  <u>See</u> Docket Entry No. 1.

2.   This Court dismissed the Petition for lack of jurisdiction,

     explaining to Petitioner that, since Petitioner's application

     was challenging the sentence imposed upon him by his federal

     court, which was the United States District Court for the

     District of Maryland ("Sentencing Court"), a § 2255 motion was

     the presumptive means to challenge Petitioner's sentence, and

     Petitioner did not assert the circumstances falling within the

     narrow exception to that rule, as defined in <u>In re Dorsainvil</u>,

     119 F.3d 245 (3d Cir. 1997).  <u>See</u> Docket Entry No. 2.  In

     other words, the Court detailed to Petitioner, the best it

     could, that this Court was without jurisdiction to "second

     guess," "vacate," "remand" or otherwise alter Petitioner's

     imposed federal sentence, since that power was reserved solely

Page  -1-

in the Sentencing Court or the courts having the power of appellate review over the Sentencing Court.   <u>See</u> <u>id.</u> (explaining to Petitioner that, while this Court expressed no opinion about procedural/substantive validity of Petitioner's § 2255 challenges, no statement made by this Court could or did affect Petitioner's ability to seek § 2255 review).

3.   The Court, therefore, directed the Clerk to terminate this matter.   In response to the Court's order dismissing his Petition, Petitioner filed a motion ("Motion") seeking <u>vacatur</u> of the Court's order.   <u>See</u> Docket Entry No. 4.   This Court construes the Motion as a motion for reconsideration of the Court's prior ruling.

4.   Petitioner's Motion consists of two parts: (a) the motion itself; and (b) attached exhibits.   The Motion part: (a) expresses Petitioner's opinion that the Sentencing Court erred by entering Petitioner's federal sentence without a clarification whether that sentence should be served concurrently or consecutively with the state sentence, which Petitioner was serving at the time when his federal criminal proceedings took place; and (b) states Petitioner's request to vacate the federal sentence imposed by the Sentencing Court (and impose a federal sentence running in retroactive concurrence with Petitioner's now-expired state sentence) or to direct the Sentencing Court to so re-sentence Petitioner.

See Docket Entry No. 4.

5.   The exhibits attached to the Motion indicate that, in January
     2005 (i.e., at the time when Petitioner was still serving his
     now-expired state sentence and was facing being released from
     state custody into federal custody in order to serve his
     federal sentence), Petitioner wrote to the Sentencing Court,
     seemingly requesting adjustment of his federal sentence so it
     would run in retroactive concurrence with the state sentence
     Petitioner was then completing.  See Docket Entry No. 4-1, at
     5.

6.   Upon receipt of Petitioner's aforesaid letter, the Sentencing
     Court wrote a letter to the attorney ("Defense Attorney") who
     represented Petitioner during the criminal proceedings before
     the Sentencing Court.  See id.  For the reasons not entirely
     clear to this Court, the Sentencing Court instructed the
     Defense Attorney to answer to Petitioner, with copying the
     Defense Attorney's answer to the Sentencing Court's Chambers.[1]

7.   The Defense Attorney, apparently, responded to the Sentencing
     Court's letter.  See Docket Entry No. 4-1, at 6-7.  The legal
     rationale of the Defense Attorney's response escapes this

_____

[1] For the reasons also unclear to this Court, the Sentencing
Court's letter, while unambiguously meant to be addressed to the
Defense Attorney and merely "cc'ed" to Petitioner, opened with an
appellation to Petitioner, i.e., "Dear Mr. Savage."  Docket Entry
No. 4-1, at 5.  This Court presumes such appellation was a typo
rather than the Sentencing Court's solicitation of Petitioner's
opinion as to what the Sentencing Court could do and why.

Court, since the Defense Attorney advised Petitioner and the
Sentencing Court that, in the Defense Attorney's opinion:

a.   Petitioner should be entitled to a "credit" against his
     federal sentence for the period running from "at least"
     the time when Petitioner made his "appearance" in the
     federal criminal proceedings before the Sentencing Court
     and until Petitioner's entry into federal custody;

b.   because the state criminal proceedings (stemming from the
     same transaction that underlain the federal criminal
     proceedings held before the Sentencing Court) were
     dropped in light of the federal criminal charges,[2]
     Petitioner should be entitled to an even larger "credit,"
     i.e., the credit for the period running from Petitioner's
     arrest on the federal charges and until Petitioner's
     entry into federal custody;

c.   the Bureau of Prisons ("BOP") has the power to grant
     Petitioner either one of these two "credits" and will do
     so; and, in addition,

d.   after sentencing Petitioner, the Sentencing Court can
     "recommend" to the BOP to run Petitioner's federal

---

[2] The state sentence, which Petitioner was serving during
the time his federal criminal proceedings before the Sentencing
Court took place, stemmed from a different transaction, i.e.,
from Petitioner's violation of his release on parole (which
release, in turn, resulted from a state incarceration that
followed Petitioner's state conviction based on yet another set
of criminal offenses). See Docket Entry No. 4-1, at 1-7.

sentence (imposed by the Sentencing Court) in retroactive concurrence with the state sentence that Petitioner was serving, and the BOP "would usually follow [the Sentencing Court's] recommendations."

Docket Entry No. 4-1, at 6-7.

The Defense Attorney's letter closed with a statement directing Petitioner to apply for in forma pauperis status or to prepay $255 filing fee in connection with the Defense Attorney's intention to seek the Sentencing Court's "recommendation" to the BOP to have Petitioner's federal sentence run in retroactive concurrence with the state sentence Petitioner. See id. at 7.

8.   There appears to be no doubt that the Defense Attorney served a copy of his above-detailed letter upon both Petitioner and the Sentencing Court. See Docket Entry No. 4-1, at 8. Petitioner's exhibits, however, do not include the Sentencing Court's response, if any, to the Defense Attorney/Petitioner, leaving it to this Court's imagination what the Sentencing Court's reaction to the Defense Attorney's letter was.[3] See generally, Docket Entry No. 4-1.

9.   Rather, Petitioner's exhibits indicate that, upon being

_____

[3] The Defense Attorney, at that time, was beginning Petitioner's direct appeal.  The District of Maryland record indicates that the Defense Attorney was swiftly released of his duties.  However, the record does not indicate the reasons for the Defense Attorney's release from representing Petitioner.

released from state custody into federal custody on May 31, 2005, Petitioner – after waiting about *four years* from the time of his receipt of the aforesaid letter from the Defense Attorney – filed an application to the BOP seeking a "<u>nunc</u> <u>pro tunc</u> credit." <u>See</u> Docket Entry No. 4-1, at 1-2.

10. The BOP denied Petitioner's request and explained to Petitioner the rule against double credits. <u>See</u> <u>id.</u>

11. Petitioner's administrative appeal was also denied; that denial was accompanied with an explanation that: (a) Petitioner was given a credit against his federal sentence for the short period running from Petitioner's arrest and until the point in time when Petitioner began serving his state sentence, since *that period* was not credited against Petitioner's state sentence; but (b) in all other respects, Petitioner did not qualify for any other "credit" because different sentences are statutorily presumed to run consecutively unless they were *expressly ordered* to run concurrently and, since no sentence that Petitioner served or was serving had been imposed to run concurrently, Petitioner's sentences absolutely had to be subject to the aforesaid presumption of consecutiveness. <u>See</u> Docket Entry No. 4-1, at 3.

12. The Court's own review of Petitioner's federal criminal proceedings before the Sentencing Court filled, to a degree,

the informational gap left by Petitioner's Motion and exhibits. Specifically, the docket in USA v. Savage, Crim. Action 04-96 (D. Md.), indicates that:

a.   At the time when Petitioner was exchanging letters with the Sentencing Court and Defense Attorney, Petitioner began pursuing his direct appeal in regard to his federal conviction/sentence imposed by the Sentencing Court, see USA v. Savage, Crim. Action 04-96 (D. Md.), Docket Entry No. 32;

b.   Pursuant to the Defense Attorney's directive, Petitioner applied for in forma pauperis status in connection with the Defense Attorney's seeking the Sentencing Court's "recommendation" to the BOP, see id., Docket Entry No. 34, and the Sentencing Court granted Petitioner in forma pauperis status.  See id. Docket Entry No. 35.

c.   One year after the time when Petitioner was exchanging letters with the Sentencing Court and Defense Attorney, Petitioner's conviction and sentence were affirmed by the Fourth Circuit.  See id. Docket Entries Nos. 45 and 46.

d.   Fifteen months after that affirmance, Petitioner filed his § 2255 motion seeking to vacate his conviction and asserting that certain evidence had to be suppressed.[4]

---

[4] It appears that Petitioner's direct appeal and § 2255 motion did not contain any requests for downward adjustment of his sentence (i.e., it did not seek re-sentencing so that

See <u>id.</u> Docket Entry No. 47; <u>see</u> <u>also</u> <u>United States v.</u> <u>Savage</u>, 161 Fed. App'x 256 (4th Cir. 2006) (detailing Petitioner's § 2255 challenges).  In September 2007, the Sentencing Court denied Petitioner's § 2255 motion, <u>see</u> <u>USA v. Savage</u>, Crim. Action 04-96 (D. Md.), Docket Entry No. 47; such denial was affirmed by the Fourth Circuit. <u>See</u> <u>id.,</u> Docket Entry No. 58.  That affirmance took place on April 3, 2008.

e.   Petitioner spent the remainder of 2008 seeking sentence reduction, pursuant to 18 U.S.C. § 3582(2)(c) ("crack cocaine reduction"); his application to that effect was also denied by the Sentencing Court, and the Fourth Circuit affirmed that determination.  <u>See</u> <u>USA v. Savage</u>, Crim. Action 04-96 (D. Md.), Docket Entries Nos. 59-62.

13.  As Petitioner's exhibits demonstrate, having no success with the Sentencing Court and the Fourth Circuit on direct appeal, his § 2255 motion and his § 3582 application, Petitioner returned, in January 2009, to his requests for downward sentence adjustment: he did it through his application to the BOP seeking "<u>nunc</u> <u>pro</u> <u>tunc</u> credit."  <u>See</u> Instant Matter, Docket Entry No. 4-1, at 1-2.  Having his application to the BOP denied, <u>see</u> <u>id.</u> at 3, Petitioner filed the § 2241 Petition

---

Petitioner's sentence would run retroactively concurrent with his state sentence).

which gave rise to the instant matter.  See Instant Matter, Docket Entry No. 1.  Upon having his Petition dismissed by this Court, see instant Matter, Docket Entry No. 2, Petitioner now filed his Motion, requesting this Court to either re-sentence him so his federal sentence would run retroactively concurrent with his now-long-expired state sentence or to direct the Sentencing Court to so re-sentence Petitioner.  See Instant Matter, Docket Entry No. 4.  For the reasons not entirely clear to this Court, Petitioner's Motion relies on Ruggiano v. Reish, 307 F.3d 121, 132 (3d Cir. 2002). See id.

14.    It is not the province of this Court to enter an opinion as to the statements made by the Defense Attorney to Petitioner and the Sentencing Court; in fact, this Court has no doubt that the Sentencing Court duly responded to Petitioner and the Defense Attorney, even though these responses were not made part of the record in USA v. Savage, Crim. Action 04-96 (D. Md.).  Moreover, granted the gist of Petitioner's instant Motion, it appears certain that the Sentencing Court denied Petitioner's request for re-sentencing with retroactive concurrence.  Therefore, this Court would address solely the issue presented by the Motion at hand, i.e., whether a vacatur of this Court's prior order, dismissing the Petition for lack of jurisdiction, is warranted.

15.        Section 2241 does "confer[] habeas jurisdiction to hear the petition of a federal prisoner who is

challenging not the validity but the execution of his sentence." <u>Coady v. Vaughn</u>, 251 F.3d 480, 485 (3d Cir. 2001).  However, [where the petitioner's] substantive argument is that he was prosecuted [or sentenced wrongly], he is in fact alleging that his conviction and sentence are unlawful.  <u>Cf.</u> <u>Reyes-Requena v. United States</u>, 243 F.3d 893, 901 (5th Cir. 2001) (stating that prisoners must proceed under § 2255 to challenge "any error that occurred at or prior to sentencing" (internal quotation marks omitted)).  We will not permit [habeas petitioners] to circumvent the requirements of § 2255 through artful labeling.

<u>Aku Yazid Abdallah v. Scism</u>, 2011 U.S. App. LEXIS 8124, at *3 (3d Cir. Apr. 20, 2011).

16.  Here, Petitioner's Motion, while maintaining that the Sentencing Court erred by not clarifying whether Petitioner's federal sentence should run consecutively or concurrently to his state sentence, accompanies this challenge with an exhibit showing that Petitioner administratively sought a "<u>nunc pro tunc</u> credit."  <u>See</u> Instant Matter, Docket Entries Nos. 4 and 4-1.  That conflation indicates Petitioner's confusion as to: (a) what action falls within the province of the Sentencing Court; and (b) what action is subject to the BOP's discretion and, correspondingly, this Court's review of BOP determination.[5]

17.  At the heart of Petitioner's Motion lies his belief that the Sentencing Court *had* to specify whether Petitioner's federal

---

[5] Granted the content of the Defense Attorney's letter to Petitioner and the Sentencing Court, Petitioner's confusion is understandable.

sentence would run consecutively or concurrently (or in retroactive concurrence) with the state sentence Petitioner was serving at the time of his federal criminal proceedings before the Sentencing Court.   <u>See</u> Docket entry No. 4. However:

a.    A directive that a convicted defendant's federal sentence would run in retroactive concurrence with another sentence has nothing to do with the "credits" that the BOP has discretional power to grant.

> [A federal] court has authority, pursuant to Guidelines § 5G1.3(c), to fashion a sentence that accounts for time already served, and "credit for time served on a pre-existing state sentence is within the exclusive power of the sentencing court." <u>Ruggiano</u>, 307 F.3d at 132; U.S.S.G. § 5G1.3(c) & cmt. n.3(E); <u>see also</u> 18 U.S.C. § 3584 (permitting concurrent terms of imprisonment). The Guidelines cautions sentencing courts that, "[t]o avoid confusion with the Bureau of Prisons' exclusive authority provided under 18 U.S.C. § 3585(b) to grant credit . . . the [Sentencing] Commission recommends that any downward departure under [] application note [3(E) in § 5G1.3] be clearly stated . . . as a downward departure pursuant to § 5G1.3(c), rather than as a credit for time served." U.S.S.G. § 5G1.3 cmt. n.3(E); <u>see also</u> <u>Ruggiano</u>, 307 F.3d at 133 ("[W]e encourage sentencing courts in the future to avoid using the term 'credit' to refer to § 5G1.3 adjustments so as not to engender any unnecessary confusion"). In <u>Ruggiano</u>, we decided that sentencing courts should use the term "adjustment," rather than "credit" or "downward departure," in order to avoid confusion when applying Guidelines § 5G1.3. [<u>See</u> <u>Ruggiano</u>,] 307 F.3d at 133. However, Application Note 3(E) to Guidelines § 5G1.3, which came into effect after <u>Ruggiano</u>,

indicates that the appropriate terminology is "downward departure."

United States v. Gaskins, 393 Fed. App's 910, 914 and n. 2 (footnoted text incorporated in the main text).

b.  The gist of the case upon which Petitioner relies is simple: in Ruggiano, the Court of Appeals stated that imposition of a retroactively concurrent sentence under § 5G1.3 is permissible. See Ruggiano, 307 F.3d at 131, 133. Specifically, the Court of Appeals concluded that the sentencing court *could* (but in no way must) exercise its authority to adjust a sentence for time served on a state conviction. See id. As explained supra, that authority is uniquely and exclusively of the federal courts rendering criminal sentences, not of the BOP. Moreover, that authority is not a "recommendation" to the BOP: its exercise produces a sentencing order with which the BOP absolutely must comply. Conversely, if the sentencing court does not order such retroactive concurrence (or any concurrence), the BOP has no discretionary power to "play" a federal court: as the BOP already (and correctly) explained to Petitioner, the BOP is statutorily bound to presume consecutiveness of sentences. Therefore, Petitioner's request, no matter how the Court slices it, cannot be framed into a challenge asserting BOP's erroneous execution of

Petitioner's sentence.[6]

c.   Finally, even if the Sentencing Court committed an error (which, this Court notes in passing, it did not) in omitting to specify whether Petitioner's federal sentence should run consecutively, concurrently (or in retroactive concurrence) with Petitioner's then-being-served state sentence, this Court is without a mandate to act as the

_____

[6] There are two situations where the BOP's power to "credit" federal sentence on the basis of concurrence might be implicated. In <u>Barden v. Keohane</u>, 921 F.2d 476 (3d Cir. 1990), the Court of Appeals was presented with a scenario where: (a) a state judge sentenced the defendant to a term of imprisonment to be served concurrently with an already-imposed federal term; but (b) since the defendant was in primary custody of the state, his federal term did not commence until he was released into federal custody after having served his state term, effectively resulting in consecutive service. <u>See</u> <u>id.</u> at 478.  The Court of Appeals recognized that, *in such scenario*, the BOP had the discretion to <u>nunc</u> <u>pro</u> <u>tunc</u> designate the state facility as the place of federal confinement so as to allow the sentences to run concurrently. <u>See</u> <u>id.</u> at 483-84.  However, here, Petitioner at no point alleged – and the record accrued during his applications to the BOP does not even suggest – that Petitioner's state sentence was ordered to run concurrently with the then-yet-to-be-imposed federal sentence by the Sentencing Court.  Hence, Petitioner's reference to "<u>nunc</u> <u>pro</u> <u>tunc</u> credit" has no factual basis or legal rationale.  Analogously, the scenario addressed in <u>Kayfez v. Gasele</u>, 993 F.2d 1288 (7th Cir. 1993), is inapplicable to Petitioner's circumstances, since, pursuant to <u>Kayfez</u>, the BOP will grant an amount of qualified double credit if the following conditions are present: (a) the non-federal and federal sentences are ordered concurrent; (b) the raw effective full term ("EFT") date of the non-federal term is later than the raw EFT of the federal term; and (c) the non-federal raw EFT, after application of qualified non-federal presentence time, is reduced to a date that is earlier than the federal raw EFT date, but – here – Petitioner's state and federal sentences were *not* ordered to run concurrently.  Thus, Petitioner has no <u>Barden</u> or <u>Kayfez</u> bases for his BOP application, and the Court has no § 2241 power of review.

court sitting in appellate review of the District of
Maryland: that power is reserved, exclusively, only in
two tribunals, <u>i.e.</u>, the Court of Appeals for the Fourth
Circuit and the United States Supreme Court. Therefore,
Petitioner's application seeking this Court's order re-
sentencing Petitioner or directing the Sentencing Court
to re-sentence Petitioner asks the Court to do what it
simply has no mandate whatsoever to do.

18.  In sum, the Motion – while providing this Court with abundance
of material – verifies, essentially, one two points: (a)
Petitioner is challenging his federal sentence, which could be
attacked only under § 2255; and (b) this Court is without
jurisdiction to address Petitioner's challenges, either under
§ 2241 or due to the limitations of its judicial mandate as a
federal court for the District of New Jersey. With that
observation, the Court now returns to the issue at hand, <u>i.e.</u>,
whether the Court shall reconsider its prior determination.

19.  A motion for reconsideration is a device of limited utility.
There are only four grounds upon which a motion for
reconsideration might be granted: (a) to correct manifest
errors of law or fact upon which the judgment was based; (b)
to present newly-discovered or previously unavailable
evidence; (c) to prevent manifest injustice; and (d) to accord
the decision to an intervening change in prevailing law. <u>See</u>

11 Charles A. Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure § 2810.1 (2d ed. 1995); see also Harsco Corp. v. Zlotnicki, 779 F.2d 906, 909 (3d Cir. 1985), cert. denied, 476 U.S. 1171 (1986) (purpose of motion for reconsideration is to correct manifest errors of law or fact or to present newly discovered evidence). "To support reargument, a moving party must show that dispositive factual matters or controlling decisions of law were overlooked by the court in reaching its prior decision." Assisted Living Associates of Moorestown, L.L.C., v. Moorestown Tp., 996 F. Supp. 409, 442 (D.N.J. 1998). In contrast, mere disagreement with the district court's decision is an inappropriate ground for a motion for reconsideration: such disagreement should be raised through the appellate process. See id. (citing Bermingham v. Sony Corp. of America, Inc., 820 F. Supp. 834, 859 n.8 (D.N.J. 1992), aff'd, 37 F.3d 1485 (3d Cir. 1994); G-69 v. Degnan, 748 F. Supp. 274, 275 (D.N.J. 1990)); see also Drysdale v. Woerth, 153 F. Supp. 2d 678, 682 (E.D. Pa. 2001) (a motion for reconsideration may not be used as a means to reargue unsuccessful theories). Consequently, "[t]he Court will only entertain such a motion where the overlooked matters, if considered by the Court, might reasonably have resulted in a different conclusion." Assisted Living, 996 F. Supp. at 442; see also Continental Cas. Co. v. Diversified

_Indus., Inc._, 884 F. Supp. 937, 943 (E.D. Pa. 1995) (
"[M]otions for reconsideration should be granted sparingly");
_Edward H. Bohlin, Co. v. Banning Co., Inc._, 6 F.3d 350, 355
(5th Cir. 1993) (a district court "has considerable discretion
in deciding whether to reopen a case under Rule 59(e)").

20. Here, Petitioner's instant Motion does not indicate any errors
of law or fact upon which the Court's order was based, it does
not assert presence of any newly-discovered or previously
unavailable evidence, it does not contain any statements
indicative of manifest injustice, and it does not refer the
Court's attention to an intervening change in prevailing law.
All what Petitioner's Motion expresses is his frustration with
Petitioner's inability to obtain a retroactively concurrent
re-sentencing from his Sentencing Court. However, Petitioner's
frustration changes none for the purposes of this action.

IT IS, therefore, on this ___31st___ day of ___May___, 2011,

ORDERED that the Clerk shall reopen this matter for the
purposes of this Court's examination of Petitioner's submission
docketed as Docket Entry No. 4, by making a new and separate entry
on the docket reading "CIVIL CASE REOPENED"; and it is further

ORDERED that Petition motion, Docket Entry No. 4, is granted
in form but denied in substance;[7] and it is further

---

[7]  The United States Court of Appeals for the Third Circuit
guided that a litigant's motion for reconsideration should be
deemed "granted" when the court (the decision of which the

ORDERED that this Court order, Docket Entry No. 2, shall remain in force, and the Petition shall remain being dismissed for lack of § 2241 jurisdiction to entertain Petitioner's claims;[8] and it is further

ORDERED that this Court expressly withdraws its jurisdiction over this action, hence ripening it for appeal in the event Petitioner wishes to seek appellate review; and it is further

ORDERED that the Clerk shall serve a copy of this Memorandum Opinion and Order upon Petitioner by regular U.S. mail; and it is finally

---

litigant is seeking a reconsideration of) addresses the merits — rather than the mere procedural propriety or lack  thereof - of that motion.  See Pena-Ruiz v. Solorzano, 281 Fed. App'x 110, 2008 U.S. App. LEXIS 12436, at *2-3, n.1 (3d Cir. 2008). However, the very fact of the court's review does not prevent the court performing such reconsideration analysis (of the original application, as supplanted by the points raised in the motion for reconsideration) from reaching a disposition identical — either in its rationale or in its outcome, or in both regards — to the court's decision previously reached upon examination of the original application.  See id.

[8] Since Petitioner's § 2255 motion was denied by the District of Maryland, and such denial was affirmed by the Fourth Circuit, this Court finds it not in the interest of justice to construe the Petition (or Petitioner's instant Motion) as an application to the Fourth Circuit for leave to file second/ successive § 2255 motion.  However, no statement made in this Memorandum Opinion and Order shall be construed as barring Petitioner from filing such an application on his own.  Moreover, taking notice of the statement made by the Defense Attorney that a § 2255 motion requires in forma pauperis status or prepayment of filing fee, this Court takes this opportunity to inform Petitioner that - unlike the act of filing a pleading - a § 2255 motion, same as any motion filed in any action, does not require in forma pauperis status or prepayment of filing fee: being already part of legal actions, all motions are free of charge.

ORDERED that the Clerk shall close the file on this matter by making a new and separate entry on the docket reading "CIVIL CASE CLOSED."

s/Robert B. Kugler
**ROBERT B. KUGLER**
**United States District Judge**